## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ZVI SHTAUBER,

Plaintiff,

v.

ALLAN GERSON,

Defendant.

Civil Action No. 16-961 (JDB)

## MEMORANDUM OPINION

Allan Gerson, the defendant and an attorney, contracted with Zvi Shtauber, the plaintiff, for Shtauber to provide services to assist Gerson in a lawsuit. Their contract specified a fee-sharing arrangement, where Gerson would share with Shtauber a portion of any contingency fee he earned from the lawsuit. Shtauber alleges that Gerson failed to pay, and now sues for enforcement of that contract, or alternatively for recovery in quantum meruit, and for a declaratory judgment that he is entitled to a portion of Gerson's fees in the future. Gerson moves to dismiss, arguing that the contract is unenforceable as contrary to public policy because a fee-sharing contract between a lawyer and a nonlawyer violates the D.C. Rules of Professional Conduct, and that Shtauber cannot pursue a claim for quantum meruit when there is a contract between the parties. The Court will deny Gerson's motion.

## BACKGROUND

The facts relating to the contract's formation are largely undisputed, although it seems that the facts regarding performance on the contract are hotly disputed. What follows is the plaintiff's version of events. According to Shtauber, Allan Gerson is a well-known D.C. attorney. Complaint [ECF No. 1] ¶ 5. In 2004, Gerson explored the possibility of suing Arab Bank and other financial

institutions "on behalf of victims of genocide and terrorism in Israel and in territories administered by the Palestinian Authority." Id. Gerson hired Shtauber to assist in the lawsuit. Id. ¶ 6. Shtauber, a resident of Israel, has experience in relevant fields of national security and has served as both the Foreign Policy Advisor to the Israeli Prime Minister and as Israel's Ambassador to the United Kingdom. Id. Shtauber connected Gerson to an Israeli attorney, David Mena, to help litigate the case against Arab Bank, and provided additional "consulting services" in connection with Gerson's suit. Id. ¶ 7.

Gerson and Shtauber entered into an Agreement on April 21, 2005 regarding payment for Shtauber's services. Id. ¶ 8; see Agreement [ECF No. 1-2]. The Agreement provides that Gerson and another attorney (together, the "Gerson Group") had entered into a joint counsel arrangement with another law firm, Motley Rice LLC, to litigate the claims against Arab Bank. Agreement ¶ 2; Compl. ¶ 9. The Agreement acknowledges that Shtauber had provided valuable services already, and states that "Shtauber's primary responsibility in the future shall be . . . consultative work with regard to investigative/political/public affairs aspects" of the case, and to "assist in liaising with" Mena. Agreement ¶ 3; Compl. ¶¶ 10–11. The Agreement also states that Shtauber is entitled to 20% of any contingent fees paid to the Gerson Group from claims referred to them by Mena. Agreement ¶¶ 3–4; Compl. ¶ 12. It also requires Gerson to provide monthly status reports to Shtauber regarding the fees, and states that Shtauber was not required to incur any expenses. Agreement ¶¶ 8, 10; Compl. ¶¶ 15–16.

Shtauber alleges that Gerson has breached the Agreement by failing to pay him the required fees. Id. ¶ 18. (The underlying litigation against Arab Bank reached a partial settlement in 2016, and thus Gerson and his co-counsel are entitled to fees. Def.'s Mot. to Dismiss [ECF No. 5] at 2. Further, Shtauber alleges that Gerson has failed to provide the required status reports, and has

required Shtauber to incur expenses (namely, legal fees) in breach of the Agreement.  Compl. ¶¶ 19–20.  In Count I, Shtauber seeks to recover damages under the contract, which he estimates at $160,000 plus interest.  Id. ¶ 23.  In Count II, he seeks quantum meruit, i.e. compensation for the reasonable value of his services, estimated at $720,000 plus interest.  Id. ¶ 29.  In Count III, he seeks a declaratory judgment that he is entitled to 20% of all contingent fees that the Gerson Group is paid on claims referred by Mena.  Id. ¶ 34.

Gerson, unsurprisingly, disputes Shtauber's claims.  He has filed a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  Gerson agrees that the two entered into a contract for Shtauber to provide consulting services related to Gerson's litigation against Arab Bank.  He argues, however, that Counts I and III must be dismissed because the contract is unenforceable as against public policy because the D.C. Rules of Professional Conduct for attorneys bar fee-sharing with non-lawyers.  See Mot. to Dismiss at 3 (citing D.C. Rules of Prof. Conduct Rule 5.4(a) (2005)).  Count II, he argues, must be dismissed as well because it is not plead with sufficient particularity, and because under D.C. law quantum meruit can only be sought when there is no valid contract.  Id. at 5, 7.

## LEGAL STANDARD

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court presumes the truth of a complaint's factual allegations, though it is "not bound to accept as true a legal conclusion couched as a factual allegation."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks omitted).  The court then asks whether the facts alleged suffice "to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  On a motion to dismiss, the court considers "facts alleged in the complaint, any documents either attached to or incorporated in the complaint and

matters of which [the court] may take judicial notice." <u>Mpoy v. Rhee</u>, 758 F.3d 285, 291 n.1 (D.C. Cir. 2014) (internal quotation marks omitted).  Because the Agreement was attached to Shtauber's complaint, it will be considered in connection with Gerson's motion to dismiss.

Here, the District of Columbia's contract law applies, as per the terms of the Agreement. <u>See</u> Agreement ¶ 11.  "When deciding state-law claims under diversity or supplemental jurisdiction, federal courts apply the choice-of-law rules of the jurisdiction in which they sit." <u>Mastro v. Potomac Elec. Power Co.</u>, 447 F.3d 843, 857 (D.C. Cir. 2006) (internal quotation marks omitted).  Under District of Columbia law, the parties to a contract may agree upon the law they wish to apply, so long as there is some reasonable relationship with the state specified. <u>Ekstrom v. Value Health, Inc.</u>, 68 F.3d 1391, 1394 (D.C. Cir. 1995) (citing <u>Norris v. Norris</u>, 419 A.2d 982, 984 (D.C. 1980)).  Despite some quibbling over this issue in the parties' briefs, the contract itself clearly states that it "shall be governed by the law of the District of Columbia."  Agreement ¶ 11.

## ANALYSIS

### I.   Counts I and III

Gerson argues that the fee sharing arrangement is forbidden by the D.C. Rules of Professional Conduct ("Rules") in effect at the time, and therefore is unenforceable as against public policy.  Shtauber responds that the Agreement is not contrary to the Rules, but even if it is, it's still enforceable.

The Agreement was signed in 2005.  At the time, Rule 5.4(a) of the D.C. Rules of Professional Conduct stated: "A lawyer or law firm shall not share legal fees with a nonlawyer" and then provided four exceptions.[1]  <u>See also</u> D.C. Code § 11-2501 (attorneys admitted to the D.C. bar are subject to the Rules).  The first two exceptions concern payments to an attorney's estate

---

[1] The Rules were substantially amended in 2007.  All references to the Rules in this opinion refer to the version in effect in 2005, unless otherwise noted.

after death.  The third exception states a "lawyer or law firm may include nonlawyer employees in a compensation or retirement plan, even though the plan is based in whole or in part on a profit sharing arrangement."  Rule 5.4(a)(3).  The fourth states that fee sharing "is permitted in a partnership or other form of organization" that meets specified requirements, as laid out in Rule 5.4(b), for a nonlawyer to exercise managerial authority over the firm or have a financial interest in the firm.  Id. 5.4(a)(4).

Shtauber argues that Rule 5.4(a) doesn't apply to this situation at all, because the comments to Rule 5.4 indicate that it only pertains to how law firms are organized when a nonlawyer exercises managerial authority or has a financial stake.  Because the Agreement does not give Shtauber any managerial role or financial interest in Gerson's firm, this rule is inapposite, he claims.  He argues that Rule 5.3 is applicable instead.  Rule 5.3 describes "Responsibilities Regarding Nonlawyer Assistants."  It requires both a partner in the employing firm, and the assistant's direct supervisor, to ensure that "the person's conduct is compatible with the professional obligations of the lawyer," and specifies when a lawyer is liable for the assistant's conduct.  See Rule 5.3.  Comment 1 to Rule 5.3 makes clear that this Rule is designed to apply to persons such as "secretaries, investigators, law student interns, and paraprofessionals."

Shtauber misreads both Rule 5.4 and Rule 5.3, however.  Rule 5.4 is the pertinent one here, and it forbids the fee sharing arrangement between Shtauber and Gerson.  Rule 5.4 by its plain language applies to "shar[ing] legal fees with a nonlawyer."  Although Comment 5 emphasizes that nonlawyer assistants are governed by Rule 5.3, neither that comment nor the comments as a whole indicate that Rule 5.4 only pertains to the organization of law firms.  Rather, Rule 5.4(b) governs the organization of firms where a nonlawyer has a financial interest or managerial authority.  Rule 5.4(a)(4) allows firms that meet the requirements of Rule 5.4(b) to be an exception

to Rule 5.4(a)'s general prohibition on "shar[ing] legal fees with a nonlawyer." Rule 5.4(a)'s clear prohibition on fee sharing is not limited to fee sharing within firms, just because one of the exceptions addresses that situation. Rule 5.3 covers a different situation entirely, and is not relevant. There is no allegation that Shtauber was an assistant such as a paralegal or legal intern who was employed and directly supervised by Gerson or any other attorney or law firm.

Rule 5.4(a) clearly prohibits the fee sharing arrangement described here. The Agreement between Shtauber and Gerson states that "Dr. Shtauber's fees under this Agreement shall be 20% of any and all contingent legal fees" due to the Gerson Group for claimants referred to them by Mena. Agreement ¶ 4. In addition to this arrangement being forbidden by the plain language of Rule 5.4(a), the D.C. Bar has issued an ethics opinion explicitly stating that "[a] payment by a lawyer to another person for the referral of legal business, which is contingent on the lawyer's receipt of fees from the referred legal business and is tied to the amount of those fees" constitutes fee sharing that is prohibited by Rule 5.4(a). See D.C. Legal Ethics Op. 286 (1998). This does not describe the exact situation here: Shtauber is not being paid directly for referring clients, rather he is being paid a contingent fee with respect to clients referred to Gerson by another attorney, Mena. Nonetheless, Shtauber is being paid "for the referral of legal business" (through an intermediary) that is "contingent on [Gerson's] receipt of fees from the referred legal business and is tied to the amount of those fees." Thus the Agreement is likely covered by Ethics Opinion 286, in addition to being forbidden by the plain language Rule 5.4(a).

Shtauber argues that Ethics Opinion 286 is no longer applicable following the 2007 revision of the Rules. That's not quite correct. Ethics Opinion 286 also discussed the version of Rule 7.1(b)(5) in effect pre-2007, which permitted a lawyer to employ a nonlawyer to assist the lawyer in soliciting new clients. Ethics Opinion 286 clarified that (under the pre-2007 Rules)

payment of a non-contingent referral fee to a nonlawyer (i.e., a fee for each referral "regardless of the success or outcome of the representation") was permissible under 7.1(b)(5) as an exception to 5.4(a), but payment of a contingent fee (i.e., a fee dependent on whether the lawsuit is successful) was not.  Id.; see also D.C. Legal Ethics Op. 253 (1994) (discussing Rule 7.1(b)(5)).  The 2007 revision of the Rules eliminated Rule 7.1(b)(5), and thus the portion of Ethics Opinion 286 discussing that provision is no longer applicable.  See Ethics Opinions Substantively Affected by the Amended Rules (Effective 2/1/2007), available at https://www.dcbar.org/bar-resources/legal-ethics/opinion-table.cfm.  However, Rule 5.4(a) was not substantively changed in ways relevant here.  There is no reason to believe, then, that Ethics Opinion 286's conclusion that contingent fees are governed by 5.4(a) is no longer valid even under the post-2007 Rules.

Instead of relying on Ethics Opinion 286, Shtauber asks the Court to consider Ethics Opinion 233.  That opinion states that "[a] law firm may agree with its clients that, depending on the outcome of a particular matter, a 'success fee' will be paid to both the law firm and a consulting firm of nonlawyer experts retained by the law firm" without running afoul of Rule 5.4(a).  D.C. Legal Ethics Op. 233 (1993).  However, that opinion emphasizes that this is analogous to Rule 3.4, which "permits payment of contingent fees to expert witnesses so long as they are not based on a percentage of the recovery."  Id.  Here, the fee due to Shtauber under the Agreement is explicitly based on a percentage of the Gerson Group's recovery.  Thus, even under Ethics Opinion 233, Shtauber and Gerson's fee arrangement is not permitted under Rule 5.4(a).

Shtauber's stronger argument, however, is that even though the agreement is contrary to Rule 5.4(a), it is still enforceable.  A contract that is contrary to public policy is generally unenforceable.  See Remsen Partners, Ltd. v. Stephen A. Goldberg Co., 755 A.2d 412, 414, 417 (D.C. 2000); CapitalKeys, LLC v. CIBER, Inc., 875 F. Supp. 2d 59, 63 (D.D.C. 2012) (applying

D.C. law); <u>see also</u> <u>W.R. Grace & Co. v. Local Union 759, Int'l Union of Rubber, Cork, Linoleum & Plastic Workers of America</u>, 461 U.S. 757, 766 (1983) (applying federal law to find that "[i]f the contract interpreted by [the arbitrator] violates some explicit public policy, we are obliged to refrain from enforcing it").

D.C. courts have not answered the question whether the D.C. Rules of Professional Conduct are an expression of D.C. public policy thus rendering contrary contracts unenforceable. Several states have reached that question, and have held that rules of professional conduct are statements of public policy, and contrary contracts are generally unenforceable.  <u>See</u> <u>Gaddy Eng'g Co. v. Bowles Rice McDavid Graff & Love, LLP</u>, 746 S.E.2d 568, 580–81 (W.Va. 2013) (Laughry, J., concurring) (noting that although the West Virginia court did not reach that question, courts in the following states have so held: California, Texas, Michigan, Georgia, Illinois, and Indiana; as well as the Sixth Circuit applying Kentucky law).  Another federal district court, when considering a different provision of the D.C. Rules of Professional Conduct, determined that D.C. courts were likely to hold that the Rules were an expression of public policy and therefore contracts that violate them are unenforceable.  <u>See</u> <u>Moskowitz v. Holman</u>, No. 15-cv-336, 2016 WL 356035, at * 15 (E.D. Va. Jan. 28, 2016).

New York, on the other hand, takes a more case-specific approach.  In <u>Marin v. Constitution Realty LLC</u>, 984 N.Y.S.2d 632 (Table), 2014 WL 658253 (N.Y. Sup. Ct. 2014) (unpublished), the court took a flexible approach, relying on New York precedent holding that "if the statute does not provide expressly that its violation will deprive the parties of their right to sue on the contract, and the denial of relief is wholly out of proportion to the requirements of public policy or appropriate individual punishment, the right to recover will not be denied."  <u>Id.</u> at *13 (internal quotation marks omitted) (quoting <u>Rosasco Creameries v. Cohen</u>, 11 N.E.2d 908, 909

(N.Y. 1937)).  The court stated that "it ill becomes defendants, who are also bound by the Code of Professional Responsibility, to seek to avoid on 'ethical' grounds the obligations of an agreement to which they freely assented and from which they reaped the benefits."  Id. at *14 (quoting Benjamin v. Koeppel, 650 N.E.2d 829, 832–33 (N.Y. 1995) (holding that a fee sharing arrangement between attorneys was enforceable, even though one attorney failed to register with the state as required)).  The court then weighed the equities, and determined that justice required that the contract be enforced.  See id. at *15.

The D.C. Court of Appeals considered a similar—but not identical—question in Landise v. Mauro, 725 A.2d 445 (D.C. 1998).  There, an attorney who was barred in Virginia and an attorney who was barred in D.C. practiced together out of an office in D.C.  Id. at 447.  The Virginia lawyer sued the D.C. lawyer claiming that they had a partnership agreement that the D.C. lawyer had breached.  Id. at 447–48.  The D.C. lawyer argued that there was no partnership agreement, and regardless, that it was unenforceable because the Virginia lawyer engaged in the unauthorized practice of law by practicing in D.C. without being admitted there.  Id. at 448–50.

The Court of Appeals held that the partnership agreement (if there was one) was still enforceable, even if the Virginia lawyer engaged in the unauthorized practice of law.  Id. at 451. The court noted that the agreement itself was not contrary to any Rules, explaining that "the fact that [the Virginia attorney] was not admitted to the D.C. Bar did not in and of itself make her or [the D.C. attorney] incapable of entering into partnership with each other under governing principles of partnership law, or render their agreement to share fees unethical under our rules." Id. at 451.  The court then considered the purpose of the prohibition on unauthorized practice of law, and held that there was no public interest in that policy that would be advanced by not enforcing the partnership agreement.  Id.  Further, echoing the language of the New York court in

Marin, it explained that although some might "declare a 'pox on both their houses'" because both parties violated the ethical Rules, "to do so in this context would be overly simplistic as it would bestow a windfall" on the defendant.  Id. at 451–52.

Based on the reasoning in Landise, this Court believes that if the D.C. Court of Appeals were to consider this issue, it would follow New York's flexible approach and hold that while the Rules express D.C.'s public policy, a court must evaluate the particular circumstances to determine whether the contract is unenforceable.  Here, "it would bestow a windfall" on Gerson to categorically deny enforcement of the contract.  See Landise, 725 A.2d at 451–52.  Gerson was well aware of the Rules when he entered into this contract—or he should have been, as an attorney licensed in D.C.  As in Marin and Benjamin, "it ill becomes [Gerson], who [is] also bound by the Code of Professional Responsibility, to seek to avoid on 'ethical' grounds the obligations of an agreement to which [he] freely assented and from which [he] reaped the benefits."  Marin, 2014 WL 658253, at *14; see Benjamin, 650 N.E.2d at 832–33.  Shtauber, on the other hand, is not an attorney and does not seek to benefit from a Rules violation.  And although Shtauber had an attorney when entering into the Agreement this does not (as Gerson argues) lead the Court to "declare a 'pox on both their houses.'"  Landise, 725 A.2d at 452.  In Landise, both parties were attorneys who knew the Rules and were equally bound by them, and yet the court still looked at the underlying public policy and whether nonenforcement of the contract would advance that public policy, or merely result in a windfall for the defendant.  It is true that in Landise the agreement itself was not prohibited by the Rules, only the Virginia attorney's practicing without a license in D.C. was.  But the agreement in Marin was prohibited by the applicable rules, and that case demonstrates that the same logic is equally applicable here.  Thus, the Court does not think that this distinction is determinative.

D.C.'s treatment of other contracts that violate public policy lends some support to the conclusion that this Agreement is enforceable.   D.C. has a longstanding tradition of strictly prohibiting home improvement contractors from performing work without a license, and holding any such contract with an unlicensed contractor unenforceable.   See, e.g., Remsen Partners, 755 A.2d at 418 & n.7–8 ("regulations absolutely prohibit contractors from requiring or accepting 'any payment for a home improvement contract in advance of full completion of all work required to be performed under the contract, unless that person is licensed as a home improvement contractor'" (quoting 16 DCMR 800.1 (1987)); Cevern, Inc. v. Ferbish, 666 A.2d 17, 22 (D.C. 1995) (explaining policy).   In fact, the D.C. Court of Appeals goes so far as to require an unlicensed home improvement contractor to return any payments received.   Remsen Partners, 755 A.3d at 418 (collecting cases).   Yet that court has emphasized that while this particularly harsh rule is appropriate in that industry, it has not been extended to most other areas governed by licensing requirements.   Id. at 418–19.   The court in Remsen Partners—a case about fees for an unlicensed real estate broker—explained that a court may "take into account, among other equitable considerations, the sophistication or the vulnerability of the user of the service."   Id. at 420.   It thus held that an unlicensed real estate broker need not repay the fees that a client already paid.   Id. at 421; see also Beard v. Goodyear Tire & Rubber Co., 587 A.2d 195, 202–05 (D.C. 1991) (declining to order disgorgement of fees paid to merchant who had not properly registered).

These cases describe scenarios quite different from the one here.   Neither Shtauber nor Gerson provided unlicensed services, and the question here is not one of repaying fees, but rather of enforcing a contract.   But these cases do indicate that in many settings, D.C. courts will take a somewhat flexible approach to contracts that are contrary to public policy.   This further indicates that the D.C. Court of Appeals would likely follow Landise in evaluating Shtauber and Gerson's

contract with similar equitable flexibility.  Thus, because at this stage of litigation we take the plaintiff's allegations as true and draw reasonable inferences in his favor, the Court will deny Gerson's motion to dismiss Count I.  However, this equitable analysis is necessarily somewhat fact-bound; as the facts develop further, the balance of equities could lead to a different conclusion.

As for Count III, both parties agree that it is dependent on Count I.  Because Count III seeks a declaratory judgment enforcing the contract, and because the Court has found that the contract is enforceable despite contradicting the D.C. Rules of Professional Conduct, the Court will deny Gerson's motion to dismiss Count III as well.

## II.    Count II

Shtauber argues, in the alternative, that Gerson was unjustly enriched by receiving Shtauber's valuable services without paying for them, and he seeks to recover in quantum meruit. Compl.  ¶¶ 28–29.  Shtauber asserts that the "reasonable value" of those services is $ 720,000, and requests payment of that amount plus interest.  Id. ¶¶ 29–30.

In the District of Columbia, generally a party may not recover on a claim of unjust enrichment or quantum meruit when there is a contract governing the conduct at issue.[2]  Harrington v. Trotman, 983 A.2d 342, 346–48 (D.C. 2009); Emerine v. Yancey, 680 A.2d 1380, 1384 (D.C. 1996).  However, the D.C. Court of Appeals has "in certain instances where the parties had a contract, allowed recovery under a theory of unjust enrichment or restitution when the claimant suffered from the other party's breach of the contract."  Harrington, 983 A.2d at 347–48 (emphasis in original) (citing, among others, Lee v. Foote, 481 A.2d 484, 485 (D.C. 1984) (per curiam)

---

[2] It is true, as Gerson argues, that recovery under a theory of unjust enrichment or quantum meruit "for performance in return for a promise unenforceable on public policy grounds is forbidden" under D.C. law.  Sturdza v. United Arab Emirates, 11 A.3d 251, 257 & n.26 (D.C. 2011); Cevern, 666 A.2d at 22; CapitalKeys, 875 F. Supp. 2d at 65.  However, this is not relevant to Count II because—at this stage of the litigation—the Court has found that the Agreement is enforceable.  If the Court later determines that the Agreement is unenforceable because it is contrary to public policy, then this line of cases may become relevant.

("When an express contract has been repudiated or materially breached by the defendant, restitution for the value of the non-breaching party's performance is available as an alternative to an action for damages on the contract.")).  Because Shtauber has alleged that Gerson materially breached the contract, at this stage he may seek damages for unjust enrichment as an alternative to damages on the contract.

Gerson also argues that Shtuaber does not plead Count II with sufficient particularity.  He characterizes Shtauber's allegations as "mere speculation" which is "insufficient to satisfy Rule 12(b)(6)."  Def.'s Mot. to Dismiss at 5 (citing Twombly, 550 U.S. at 555).  The Court need not spend much time dispensing with this argument.  Shtauber alleges that he and Gerson entered into an Agreement where Gerson would pay Shtauber for his services, including but not limited to connecting Gerson with Mena, continuing to coordinate with Mena, and undertaking "investigative/political/public affairs" activities.  Compl. ¶¶ 10–11.  Shtauber further alleges that Gerson breached this agreement.  Compl. ¶¶ 26–28.  These are factual allegations, not "mere conclusory statements" or "recitals of the elements of a cause of action."  Iqbal, 556 U.S. at 678.  There is nothing implausible about such a claim for breach of contract.  See id.; cf. id. at 696 (Souter, J., dissenting) (implausible claims involve "little green men" or "time travel").  And although Shtauber has not substantiated his assertion that the value of his services is $720,000, he need not plead "detailed factual allegations" at this stage.  See Twombly, 550 U.S. at 555.  Therefore, Gerson's motion to dismiss Count II will be denied as well.

## CONCLUSION

This case raises an open question of District of Columbia law.  In light of existing D.C. Court of Appeals precedent, this Court believes that although the Agreement violates the D.C. Rules of Professional Conduct, it is nonetheless enforceable in this particular instance.  Moreover,

Shtauber may seek recovery in <u>quantum meruit</u> as an alternative to damages on the contract.

Therefore, Gerson's motion to dismiss will be **DENIED**.  A separate order will issue on this date.

_____
/s/
JOHN D. BATES
United States District Judge

Dated:  <u>March 10, 2017</u>